UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Steven E. Broughton,

    Plaintiff,

        v.

Premier Health Care
Services, Inc., *et al.*,

    Defendants.

Case No. 1:12cv991

Judge Michael R. Barrett

## OPINION & ORDER

This matter is before the Court upon Defendant Warren County's Motion for Summary Judgment (Doc. 29) and Defendants Premier Health Care Services, Inc. William Cole, M.D., Christina Finney Hubbard, Cherie Thomas, and Joann McGuffey's ("Premier Defendants") Motion for Summary Judgment (Doc. 32).  These Motions have been fully briefed.  (Docs. 63, 64, 66, 67).

### I.    BACKGROUND

In November of 2009, Plaintiff pled guilty to charges of possession of underage and nudity-oriented material, and was sentenced to sixty days in jail and three years of probation.  (Doc. 31, Steven Broughton Dep. at 15-17).  Plaintiff served his sixty-day sentence in the Warren County Jail.  (Id. at 19, 79-80).  After his release, Plaintiff violated the terms of his probation and was returned to the Warren County Jail on June 24, 2011.  (Id. at 80, 89).

When Plaintiff was booked in the Jail on June 24, 2011, a Warren County corrections officer completed a medical screening form which was then signed by

Plaintiff. (Id. at 84; Broughton Dep. Ex. A). The booking officer checked "no" to the question: "Does inmate's behavior suggest the risk of suicide or assault?" (Ex. A). Plaintiff told the corrections officer he was not having suicidal thoughts and he had last attempted suicide three years ago. (Id.; Broughton Dep. at 92). However, nine days earlier, Plaintiff had been hospitalized for an attempted overdose. (Broughton Dep. at 85, 184). Plaintiff intentionally concealed this information to avoid suicide watch. (Id. at 90, 105).[1] Plaintiff had been on suicide watch when he served his sixty-day sentence in November of 2009 because at that time, he told staff he had suicidal thoughts. (Id. at 19, 79-80). When an inmate is placed on suicide watch in the Jail, the inmate is placed in isolation for twenty-three hours a day, with one hour allowed for showering. (Id. at 35). The corrections officers check the inmate every fifteen minutes. (Id.)

On June 25, 2011, Plaintiff signed a medical screening form completed by Defendant Thomas, who is a nurse. (Id. at 94, 99; Broughton Dep. Ex. B). When asked if he had thoughts or ever attempted suicide, Plaintiff responded a "long time ago." (Ex. B). The form notes a medical history of psychiatric disorder, and Thomas made a handwritten note: "depression." (Id.) This medical screening form also lists the prescription medications Plaintiff was taking at the time: Depakote, Atenolol, Celexa and Lisinopril and Ambien. (Id.; see also Broughton Dep. at 95). Plaintiff was offered Depakote, Atenolol, Celexa and Lisinopril beginning on June 26, 2011, but was not given Ambien. (Doc. 32-4, William Cole, M.D. Aff. ¶ 3).

After a verbal altercation with his roommate, Plaintiff was placed in "disciplinary

---

[1] Plaintiff testified in his deposition that when he was booked in the Jail, he was still wearing the bracelet from the hospital because he was arrested at the hospital. (Broughton Dep. at 85). However, Plaintiff later changed his testimony and stated he was mistaken about the dates. (Id. at 185).

2

segregation." (Broughton Dep. at 81-83, 100-101). Corrections officers checked on Plaintiff every sixty to ninety minutes. (Id. at 119-120).

On the morning of July 1, 2011, Plaintiff refused recreation time, his morning meal and his medication. (Doc. 43-3, Kelly Blair Dep. Ex. 11). At approximately 9:42 am, the Jail Log shows completion of the "rounds" of the disciplinary segregation cells where Plaintiff was being held. (Id.) At approximately 10:27, the log shows that a corrections officer radioed for assistance for Plaintiff. (Id.) Plaintiff had attempted to hang himself. The corrections officers cut Plaintiff down, began CPR, and then Plaintiff was taken by air-flight to the hospital. (Id.; Broughton Dep. at 126-28). While Plaintiff survived the suicide attempt, he claims he has suffered permanent injuries.

Plaintiff brings claims under 42 U.S.C. § 1983 for violations of the Eighth and Fourteenth Amendments against Warren County. Plaintiff also brings these claims against Premier Health Care Services, Inc., with whom Warren County contracted to provide medical services for the Jail; and William Cole, M.D., Christina Finney Hubbard, Cherie Thomas and Joann McGuffey, who were employees of Premier Health Care Services. Plaintiff brings a medical malpractice claim under Ohio law against the Premier Defendants only.

## II. ANALYSIS

### A. Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" only if its resolution affects the outcome of the suit. *Id.* A court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### B. Section 1983

"To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006) (citing *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988)). The Premier Defendants do not dispute that its medical director--Dr. Cole--or its nurses--Hubbard, Thomas and McGuffey--were acting under the color of state law.

Under Section 1983, a municipality cannot be held liable based on a theory of *respondeat superior*. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Instead, Section 1983 liability must be based on a policy or custom of the municipality which causes a constitutional violation by one of its employees. *Id.* at 694.

The Eighth Amendment prohibits prison officials from "'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward the inmate's serious medical needs." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895

4

(6th Cir. 2004) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). This is true "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-105.

Plaintiff claims Defendants were deliberately indifferent to his serious medical needs in two ways: (1) Defendants failed to place Plaintiff on suicide watch; (2) Defendants refused to administer Plaintiff's Ambien prescription to him. Plaintiff's claim against the County appears to be based on both a failure to train and the County's policy of denying inmates medications determined to be narcotics or scheduled substances.

Not every prisoner's allegation of inadequate medical treatment is a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. "Deliberate indifference requires a degree of culpability greater than mere negligence, but less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Perez v. Oakland Cnty.*, 466 F.3d 416, 424 (6th Cir. 2006) (internal quotation marks omitted). Prison officials may only be held civilly liable for deliberate indifference to the serious medical needs of prisoners if both the objective and subjective components of the deliberate indifference standard are satisfied. *Id.* at 423. The objective component only requires proof that the prisoner's medical need is "sufficiently serious." *Id.* at 424. The subjective component requires proof of three elements: (1) prison officials subjectively perceived facts from which to infer a substantial risk to the prisoner; (2) the officials did in fact draw the inference; and (3) the officials disregarded that risk. *Id.*

**1. <u>Failure to place Plaintiff on suicide watch</u>**

"The Sixth Circuit has long recognized 'that psychological needs manifesting themselves in suicidal tendencies are serious medical needs' in the Eighth Amendment context.'" *Linden v. Washtenaw Cnty.*, 167 F. App'x 410, 416 (6th Cir. 2006) (quoting *Crocker v. County of Macomb*, 285 F.Supp.2d 971, 975 (E.D.Mich. 2003)).  A genuine issue of fact regarding the objective component of the standard can be met by a showing that the inmate posed a strong likelihood of another suicide attempt.  *Perez*, 466 F.3d at 424 (citing *Gray v. City of Detroit*, 399 F.3d 612, 616 (6th Cir. 2005)).  Here, Plaintiff had been placed on suicide watch during his November 2009 incarceration in the Jail.  Nine days before returning to the Jail, Plaintiff had been hospitalized for an attempted overdose.  When Plaintiff entered the Jail on June 24, 2011, Plaintiff had been prescribed Depakote, which is a mood stabilizer, and Celexa, which is used to treat depression and anxiety.  Therefore, Plaintiff has shown there is a genuine issue of material fact as to the objective component because there is evidence that there was a strong likelihood Plaintiff would attempt suicide.

Defendants argue that Plaintiff cannot meet the subjective component of the deliberate indifference analysis because Plaintiff concealed his suicidal thoughts from prison officials.  Defendants argue that Plaintiff cannot show that Defendants perceived the high risk of suicide and were indifferent to that risk.

Plaintiff responds that as part of the screening process, Defendants failed to properly designate Plaintiff as a "special needs" inmate, which is an inmate who is mentally ill or suicidal.  In support of this argument, Plaintiff relies on specific sections of Premier Health Care Service's written policies for conducting the screening process at the

Jail.[2] (See Doc. 42-3, Exs. 10-19).

"Inmates do not have an Eighth Amendment right 'to be screened correctly for suicidal tendencies,' but 'prison officials who have been alerted to a prisoner's serious medical needs are under an obligation to offer medical care to such a prisoner.'" *Grabow v. Cnty. of Macomb*, 580 F. App'x 300, 307 (6th Cir. 2014) (quoting *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)).

For example, in *Galloway v. Anuszkiewicz*, the inmate resisted the jail intake screening process and exhibited odd behavior, including arguing with his right hand and responding to a question about thoughts of self-harm by becoming agitated, pushing over a chair, and then walking away. 518 F. App'x 330, 331 (6th Cir. 2013). Although the nursing staff considered the inmate's behavior delusional, the inmate was admitted into the jail. *Id.* Because no one from the jail's mental health staff was available during the intake screening, the screening nurse placed the inmate on psychiatric seclusion precautions with observations for self-harm every fifteen minutes. *Id.* The intake nurse also ordered that the inmate be given a suicide precautions blanket and mattress, which are designed to reduce the risk of self-harm. *Id.* The inmate was placed in the jail's mental health unit. *Id.* Early the next morning, these conditions were approved via telephone by the jail's psychologist. *Id.* Later that day, a mental health assistant

---

[2] Relying on the opinion of its expert, Dr. Lester Silver, Plaintiff argues Defendants violated a number of internal policies related to the screening process. Specifically, Plaintiff argues Defendants violated J-E-02 because during the screening process, Defendants should have referred Plaintiff for a nursing evaluation. Plaintiff argues that Defendants violated J-G-02 because Plaintiff was suicidal, he had special health needs and should have been automatically referred to the appropriate medical or mental health professional for evaluation and development of a treatment plan. Plaintiff argues Defendants violated J-E-1 because the nurses did not have appropriate training. Finally, Plaintiff argues that Defendant violated J-E-05 because Plaintiff had mental health issues and he should have been referred to a mental health counselor for more in-depth evaluation.

7

personally evaluated the inmate and determined that he no longer exhibited paranoid behavior. *Id.* The jail's psychologist removed the inmate from psychiatric seclusion precautions and self-harm observations, but had him observed every fifteen minutes for odd behavior. *Id.* The suicide precautions blanket and mattress were replaced with standard bedding. *Id.*

The inmate's odd behavior continued. *Id.* The jail psychologist personally evaluated the inmate, and ordered that the standard bedding be removed and the suicide precautions blanket be given back to the inmate. *Id.* at 331-32. The inmate was placed on fifteen minute observations for odd and aggressive behavior. *Id.* at 332. Later, a corrections officer allowed the inmate out of his cell to use the telephone, and the inmate hung himself with a phone cord. *Id.* The inmate was transported to a nearby hospital, but he later died. *Id.*

The plaintiff, the personal representative of the inmate, brought a deliberate indifference claim against the jail psychologist and the corrections officer who allowed the inmate to use the phone. *Id.* at 331. The defendants did not dispute that the plaintiff had established the objective component of a deliberate indifference claim. *Id.* at 333. Therefore, the only issue was whether there was sufficient evidence of the subjective component.

As to the jail psychologist, the court found even if he had perceived facts from which he drew an inference that the decedent exhibited a "strong likelihood" of suicide, no reasonable jury could find that the psychologist deliberately disregarded that risk by not taking the extra step of informing the jail staff that he thought the decedent was suicidal. *Id.*

8

As to the corrections officer, the court concluded that the issuance of the suicide precautions blanket itself did not reasonably lead to the conclusion that the officer contemplated, but then disregarded that there was a "strong likelihood" that the decedent would commit suicide. *Id.* at 336. The court noted that precautions blankets are issued to inmates for reasons unrelated to self-harm. *Id.* The court then explained:

> Further, assuming that a reasonable factfinder could conclude that [the corrections officer] had knowledge that the decedent may have been suicidal based on the precautions blanket, there remains no liability because it is not enough to establish that an official may have acted with deliberate indifference to some possibility of suicide, or even a likelihood of suicide; the test is a strong likelihood of suicide. This is a critical distinction because a finding of deliberate indifference requires a sufficiently culpable state of mind, which the Supreme Court has equated with criminal recklessness. *See Weaver v. Shadoan*, 340 F.3d 398, 410 (6th Cir. 2003) (citing *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970). And here, the mere presence of the precautions blanket (the meaning of which is ambiguous), coupled with the absence of any objective manifestation of suicidal ideation, provides no basis from which a reasonable jury could conclude that [the corrections officer] perceived a strong likelihood of suicide before the telephone cord incident. *See Farmer*, 511 U.S. at 838, 114 S.Ct. 1970 ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.").

*Id.* at 336. Accordingly, the court upheld the grant of summary judgment in favor of the jail psychologist and the corrections officer. *Id.*

Here, the screening process was thwarted by the misinformation Plaintiff provided to Defendants. On the Medical Screening Form dated June 24, 2011, Plaintiff was asked "[h]ave you ever attempted suicide or are you thinking about it now?" (Doc. 31, Ex. A). Plaintiff replied "[y]es, 3 years ago and is not thinking about it now." (Id.) The next day, on a Medical Screening Form dated June 25, 2011, Plaintiff was asked question 15: "Have you ever had thoughts/attempts of suicide?" (Doc. 31, Ex. B). Plaintiff checked the "yes" box and the nurse made a note: "long time ago." (Id.) Plaintiff then

9

responded "No" to question 16 "[d]o you want to harm yourself or others?" (Id.) The only indication of Plaintiff's condition is included in the "Comments" section of the form, where Plaintiff describes himself as "drained feel like crap." (Id.) However, Plaintiff did not express his thoughts of suicide to anybody because he "did not want to be placed in isolation." (Broughton Dep. at 89-90). Therefore, during the screening process, there was no objective manifestation of suicidal ideation from which Defendants could perceive a strong likelihood of suicide.

Plaintiff argues that Defendants were alerted to his serious medical needs because he was put on suicide watch during his November 2009 incarceration in the Jail. However, in his discussion of the subjective component of the deliberate indifference analysis, Plaintiff does not differentiate among Defendants. Plaintiff has not shown that Dr. Cole, or any of the nurses--Hubbard, Thomas, or McGuffey--were working in the Jail in November of 2009 when Plaintiff was placed on suicide watch.

Even if there was evidence that these Defendants knew Plaintiff had previously been on suicide watch, this evidence is not sufficient to infer a substantial risk. Plaintiff must show more than the fact that Defendants knew he "may be at risk" of suicide or presented "some level of risk." *See Galloway*, 518 F. App'x at 335.

In *Grabow v. County of Macomb*, the inmate was arrested after her boyfriend contacted the police and reported that he was the victim of domestic violence. 580 F. App'x 300, 302 (6th Cir. 2014). The arresting officer completed a "Jail Detention Card," and responded "No" to a question asking if the inmate had verbalized thoughts of suicide. *Id.* The inmate had previously been incarcerated in the same jail on at least twelve separate occasions. *Id.* During a prior incarceration, in 2008, the inmate was placed in

observation status because she expressed an interest in self-harm.  *Id*.  After twenty-five hours of observation, it was determined that the inmate was no longer a suicide threat and she was moved to the general population.  *Id*.  The inmate remained there for a month without incident.  *Id*.

On this occasion, the intake officers performed an abbreviated version of the screening process which was outlined in the jail's policies.  *Id*. at 303-304.  However, the inmate told the officers that she had never attempted suicide and did not feel like she wanted to hurt herself at that time.  *Id*. at 304.  The booking officer recognized the inmate from her previous incarcerations.  *Id*.  In addition, the booking officer would have had access to computer records showing an alert that the inmate had been placed on suicide watch status in 2008.  *Id*.  However, there is no evidence that the booking officer would have seen the alert as part of the routine booking process.  *Id*.  The inmate was assigned to the general population holding cell.  *Id*.

The inmate later met with a jail nurse and told the nurse about her prior diagnoses of depression and bipolar disorder, her present feelings of hopelessness due to the arrest, and a 2010 suicide attempt.  *Id*.  According to prison policies, those answers should have prompted the nurse to recommend an immediate mental health referral.  *Id*. at 304-305.  Instead, the nurse recommended that a mental health evaluation occur within seven days and the inmate be place on detox protocol.  *Id.* at 305.  The nurse did not put the inmate on suicide watch, but instead recommended that jail officials monitor her for suicide risk and depression.  *Id*.

On the first day in the jail, the inmate did not show any signs of physical or mental problems, and even joked about items she had stolen from Wal-Mart.  *Id*.  On the

11

second day, the inmate was transported for a court hearing in the morning, and complained of a rash that afternoon when she returned to the jail. *Id.* Before the jail nurse had a chance to look at the rash, the inmate hung herself in her cell. *Id.*

The personal representative of the inmate brought claims of deliberate indifference against the booking officer and the county. *Id.* The plaintiff argued that the following evidence supported her claim that the booking officer was deliberately indifferent to the inmate's risk of suicide: (1) the booking officer recognized the inmate from their prior interactions; (2) the inmate previously had been under suicide watch at the jail; (3) the inmate falsified the Initial Classification/Temporary Cell Assignment form; and (4) the alert in the computer system noted that the inmate was once considered a suicide risk. *Id.* at 309.

The court found that this evidence was insufficient to establish deliberate indifference. The booking officer had not been working in the jail in 2008 when the inmate had been placed on suicide watch, and moreover, the inmate had been returned to the general population on that occasion and had been incarcerated on three other occasions without incident. *Id.* The court explained that even though the booking officer had been negligent by virtue of conducting an abbreviated screening process, there was undisputed evidence that even if the complete procedure had been followed, or if the alert in the computer system had been checked, it was unlikely that the inmate would have been placed on suicide watch. *Id.* at 310. The court concluded that the plaintiff had not shown the necessary subjective knowledge to support a deliberate indifference claim, and absent an underlying constitutional violation, there could be no municipal liability against the county. *Id.* at 311-12.

Similarly, the Court finds that the evidence that Plaintiff was previously placed on a suicide watch at the Jail does not establish subjective knowledge on the part of Defendants. To satisfy the subjective component of the test for deliberate indifference, it is not enough "merely to find that a reasonable person would have known, or that the defendant should have known" that there was a substantial risk to be inferred. *Farmer*, 511 U.S. at 843.

Plaintiff also relies on the affidavit of his foster father, Darren Steiner, who states that he called the Jail to advise jail personnel that Plaintiff needed his medications and had recently attempted suicide. (Doc. 63-1, Darren Steiner Aff. ¶ 4). Steiner states that he spoke with a male person at the Jail, but that person would not connect Steiner to the medical staff. (Id., ¶ 5). Steiner states that on three different days he tried to alert the authorities regarding Plaintiff's complaints and suicide attempts, but was never connected to the medical staff. (Id., ¶ 6).

The test for deliberate indifference is not a test of "collective knowledge." *Gray v. City of Detroit*, 399 F.3d 612, 616 (6th Cir. 2005). There is no evidence that the information from Steiner ever made its way to Dr. Cole, Hubbard, Thomas or McGuffey. Therefore, these Defendants could not be aware of any substantial risk of serious harm. *Accord Dajani v. Montgomery Cnty., Kentucky*, 59 F. App'x 740, 748 (6th Cir. 2003) (defendants could not be aware of any substantial risk of serious harm where plaintiff failed to present evidence of defendants' knowledge of plaintiff's condition).

Therefore, Plaintiff has not shown that there is a genuine issue of material fact as to whether the Premier Defendants acted with deliberate indifference toward Plaintiff's

risk of suicide. Accordingly, Plaintiff has not established liability on the part of the County for failing to train its employees.

### 2. Failure to administer Ambien

Plaintiff claims that Warren County had a policy of denying medications determined to be narcotics or scheduled substances, and therefore refused to administer Ambien to Plaintiff. According to Plaintiff, this is not a written policy, but is an oral policy.

Plaintiff has not satisfied the objective element of the deliberate indifference analysis because he has not demonstrated a sufficiently serious medical need for Ambien, which is prescribed to treat sleep problems. As part of the medical screening process on June 25, 2011, Plaintiff was asked if he used drugs. (Doc. 31, Ex. B). Plaintiff responded that he "snorted" Ambien. (Id.) At no time while he was at the Jail did Plaintiff complain of sleep problems. Plaintiff did make a sick call request, but it was for "possible withdraw from prescription meds." (Doc. 31, Broughton Dep. Ex. C).[3]

Because Plaintiff has not shown that he had a serious medical need for Ambien, it is unnecessary to determine whether the denial of the medication amounted to deliberate indifference. *Accord French v. Daviess Cnty., Ky.*, 376 F. App'x 519, 521 (6th Cir. 2010) (where plaintiff did not have a serious medical need for narcotic pain medication it is unnecessary to discuss whether the denial of Lorcet was a "wanton infliction of pain.").

Because Plaintiff has not shown there is a genuine issue of material fact as to whether Defendants acted with deliberate indifference toward the Plaintiff's serious medical needs, Defendants are entitled to summary judgment on Plaintiff's Section 1983

---

[3]To the extent that these symptoms stemmed from Plaintiff's abuse of Ambien, Plaintiff was seen by Defendant Hubbard who recorded no complaints of pain or discomfort. (Doc. 31, Broughton Dep. Ex. C).

14

claim.

### C. Medical malpractice under Ohio law

Plaintiff brought a medical malpractice claim under Ohio law, but has not addressed this claim in response to Defendants' Motions for Summary Judgment. "The failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion." *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009).

However, because this Court has dismissed Plaintiff's claims under Section 1983, the Court declines to exercise supplemental jurisdiction over Plaintiff's medical malpractice claims under state law.[4] *See* 28 U.S.C. § 1367(c)(3) (noting that a district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if ... (3) the district court has dismissed all claims over which it has original jurisdiction"); *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996) (where "all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims."). Therefore, Plaintiff's medical malpractice claim under Ohio law is DISMISSED without PREJUDICE.

### III. CONCLUSION

Based on the foregoing, Defendant Warren County's Motion for Summary Judgment (Doc. 29) is **GRANTED** as to Plaintiff's claim under 42 U.S.C. § 1983; and Defendants Premier Health Care Services, Inc. William Cole, M.D., Christina Finney Hubbard, Cherie Thomas, and Joann McGuffey's Motion for Summary Judgment (Doc.

---

[4]In the Amended Complaint, Plaintiff refers to the medical malpractice claims against the Premier Defendants as "pendant" claims and includes addresses in Ohio for these Defendants. Therefore, it would appear that diversity jurisdiction does not exist.

32) is **GRANTED** as to Plaintiff's claim under 42 U.S.C. § 1983.  Plaintiff's claim for medical malpractice under Ohio law is **DISMISSED without PREJUDICE**.  This matter is **CLOSED** and **TERMINATED** from the docket of this Court.

    **IT IS SO ORDERED.**

                                            */s/ Michael R. Barrett*
                                       Michael R. Barrett
                                       United States District Judge